**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| ANGEL SALVADOR RUIZ SENCION,<br><br>Petitioner,<br><br>v.<br><br>ANTONE MONIZ, Superintendent,<br>Plymouth County Correctional Facility;<br>TODD LYONS, Acting Director, U.S.<br>Immigration and Customs Enforcement;<br>MARKWAYNE MULLIN, U.S. Secretary<br>of the Department of Homeland Security;<br>TODD BLANCHE, U.S. Attorney General;<br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY; EXECUTIVE OFFICE FOR<br>IMMIGRATION REVIEW,<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 26-CV-12394-AK |

**MEMORANDUM AND ORDER ON**
**PETITION FOR WRIT OF HABEAS CORPUS**

**ANGEL KELLEY, D.J.**

Petitioner Angel Ruiz Sencion is a citizen of Spain and the Dominican Republic who is detained in Plymouth County Correctional Facility in Plymouth, Massachusetts. Petitioner filed a combined Petition for a Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief, which challenges his detention and removal under the Due Process Clause and Administrative Procedure Act. [Dkt. 1]. The Petition has been briefed and is now before the Court. For the following reasons, the Petition for a Writ of Habeas Corpus [Dkt. 1] is **GRANTED**.

1

## I.    BACKGROUND

Petitioner Angel Salvador Ruiz Sencion is a citizen of Spain and the Dominican Republic.  He is married to a United States citizen and has two pending applications, an I-130 and I-485, for adjustment of status in the United States based upon that marriage.  Petitioner entered the United States under the Visa Waiver Program ("VWP") on or about September 15, 2023.  Petitioner did not leave the United States after the expiration of his VWP.  On February 17, 2026, Petitioner was arrested for one count of driving under the influence and was released on bond on March 5, 2026.  Sometime after Petitioner's release on bond, he was taken into custody by Immigration and Customs Enforcement ("ICE") and remains in ICE custody.

On April 9, 2026, ICE issued Petitioner a Notice of Intent to Issue a Final Administrative Removal Order, which advised him that he overstayed the term of his admission.  On April 14, 2026, ICE issued Petitioner with a VWP Final Administrative Removal Order.  That same day, Petitioner requested a bond hearing with the Executive Office of Immigration Review ("EOIR").  On April 23, 2026, the Immigration Court denied Petitioner's request for bond for lack of jurisdiction.  On May 28, 2026, the criminal charge against Petitioner was dismissed.  Around the same time, Petitioner received notice that he would be scheduled for an interview for an I-130 application submitted by Petitioner's spouse, on his behalf.

On May 27, 2026, Petitioner filed a Petition for Writ of Habeas Corpus and Complaint, challenging his detention and pending removal under the Due Process Clause and Administrative Procedure Act. [Dkt. 1].  On June 2, 2026, Respondents submitted their Opposition. [Dkt. 9].  Petitioners submitted their Reply on June 8, 2026, which set forth a new argument that Petitioner's detention violates the class action settlement in Calderon v. Mayorkas, 18-CV-1025 (D. Mass.). [Dkt. 11].  On June 9, 2026, the Court ordered Respondents to submit an additional

response addressing Petitioner's Calderon argument. [Dkt. 12].  On June 12, 2026, Respondents submitted their Response [Dkt. 13] and on June 23, 2026, Respondents filed a Notice of Supplemental Authority [Dkt. 16].  On June 24, 2026, Petitioner submitted another reply. [Dkt. 17].  As the parties have only briefed the issues associated with Petitioner's Petition challenging his detention, only those issues are properly before the Court.  With that stage set, the Court now addresses the legality of Petitioner's detention.

## II.      LEGAL STANDARD

Section 2241 provides district courts with jurisdiction to hear federal habeas petitions from petitioners who are "in custody in violation of the Constitution or laws or treaties of the United States." 8 U.S.C. § 2241(c)(3).  The petitioner bears the burden of proving that their custody is illegal. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009).

## III.     DISCUSSION

Petitioner alleges that his detention is unlawful because his detention is pursuant to 8 U.S.C. 1226(a), which requires a bond hearing, rather than 8 U.S.C. § 1231(a), which requires mandatory detention.  Under this theory, Petitioner's detention allegedly violates both the Due Process Clause and the Administrative Procedure Act.  Petitioner further alleges that his detention violates the Due Process Clause because Respondents are interfering with his right to the adjudication of his I-130 application.  The Court will start by addressing Respondents' jurisdictional arguments, then will move to the merits.

### A.      Section 1252(g)

Respondents argue that the Court lacks jurisdiction to stay Petitioner's removal under 8 U.S.C. § 1252(g).  Section 1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General

to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).  The Supreme Court has interpreted Section 1252(g) to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999).  In Jennings v. Rodriguez, 583 U.S. 281 (2018), the Court reaffirmed its narrow construction of Section 1252(g), noting that Reno "did not interpret [the phrase "arising from" in Section 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General.  Instead, [Reno] read the language to refer to just those three specific actions themselves." Id. at 294.

As the Supreme Court has explained, Section 1252(g) is a "discretion-protecting" provision of the INA that is designed to shield from judicial review exercises of prosecutorial discretion with respect to pending removal proceedings. See Reno, 525 U.S. at 487.  But a challenge to the legality of one's detention is distinct from a challenge to removal proceedings. The First Circuit has recognized that Section 1252(g) "does not bar judicial review of . . . challenge[s] to the lawfulness of detention," particularly given that "assertions of illegal detention are plainly collateral to ICE's prosecutorial decision to execute [a noncitizen's] removal." Kong v. United States, 62 F.4th 608, 617 (1st Cir. 2023).  This is because challenges to the legality of a petitioner's detention are not challenging the "'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'" Reno, 525 U.S. at 482.

Here, Petitioner challenges both his removal and the legality of his detention.  However, as previously noted, only Petitioner's challenge to the lawfulness of his detention is currently before the Court.  Petitioner asserts his detention is not barred because Section 1252(g) "does not bar judicial review of . . . challenge[s] to the lawfulness of detention." Kong, 62 F.4th at 617.

4

Although a decision regarding Petitioner's detention will have consequences for his removability, "[w]hen asking if a claim is barred by § 1252(g), courts must focus on the action being challenged," not the "relief sought." Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs., 964 F.3d 1250, 1257-58 (11th Cir. 2020). This follows from the basic principle that a court's decision as to remedy "is, of course, different from [and subsequent to] the question [of] whether there is jurisdiction." Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers, 390 U.S. 557, 561 (1968). Section 1252(g) is a jurisdictional bar, not a remedial limitation. Oliveira v. Edlow, No. 25-CV-13228, 2025 WL 3492110, at *9 (D. Mass. Dec. 4, 2025); Quichimbo Sumba v. Edlow, 822 F. Supp. 3d 234, 246 (D. Mass. 2026). Accordingly, the Court has jurisdiction to address the legality of Petitioner's detention.

### B.      Due Process

Petitioner argues that Respondents violate his Due Process rights by interfering with his right to the adjudication of his I-130 application. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). After a petitioner has identified a property or liberty interest, courts must determine whether constitutionally sufficient process has been provided. Id. at 332-33.

The Due Process Clause of the Fifth Amendment provides that that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The rights guaranteed by the Fifth Amendment extend to all individuals in the United States, whether their presence is "lawful, unlawful, temporary or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Procedural due process claims, such as those asserted here, are assessed

through the application of the three-factor balancing test provided in Mathews.  Under the Mathews test, courts look to: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

### 1.  Protected Interest

To state a claim for procedural due process protections, a plaintiff must "first state that he has been deprived of some protected liberty or property interest." Roe v. Lynch, 997 F.3d 80, 85 (1st Cir. 2021) (citing Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569-70 (1972)).  Due process does not protect interests for which a party has "an abstract need or desire." Bd. of Regents, 408 U.S. at 577.  Instead, a party must "have a legitimate claim of entitlement to" the interest. Id.  A legitimate claim of entitlement is determined by the "unique structure and language" of the statute, specifically focusing on whether the statute uses "mandatory language." Bartlett v. Mass. Parole Bd., No. 13-CV-11479, 2013 WL 3766747, at *4 (D. Mass. July 15, 2013) (quoting Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 12 (1979)); see Ziskend v. O'Leary, 79 F. Supp. 2d 10, 13-14 (D. Mass. 2000) (Courts should look to "(1) whether the statute limits the discretion of decisionmakers, and (2) whether a statute has mandatory language in order to determine whether the statute limits a decision-maker's discretion such that it gives rise to a legitimate claim of entitlement.") (internal quotation marks omitted)).

Under Section 1154(a)(1)(A)(i), non-citizen spouses of United States citizens "may file a [I-130] petition with the Attorney General." 8 U.S.C. § 1154(a)(1)(A)(i).  This language provides

non-citizens spouses of United States citizens with an unqualified right to file an I-130 application. The right to apply carries with it the right to have the I-130 adjudicated. See You v. Nielsen, 321 F. Supp. 3d 451, 465 (S.D.N.Y. 2018) (without adjudication the opportunity to submit applications to seek relief from removal would be "a mere illusion") (quoting Ceta v. Mukasey, 535 F.3d 639, 647 (7th Cir. 2008)). Accordingly, Petitioner has a due process-protected right to the adjudication of his I-130 Form. See Lee v. Barr, 975 F.3d 69, 75-76 (1st Cir. 2020) ("[Plaintiff] also argues that despite the discretionary nature of a decision to adjust an alien's status, he is entitled to the opportunity to seek such an adjustment even if he may not ultimately succeed. That is certainly true in the abstract."); Caplash v. Johnson, 230 F. Supp. 3d 128, 139 (W.D.N.Y. 2017) ("[A] constitutionally protected property interest attaches to 8 U.S.C. § 1154(b), and, by extension, to the adjudication of Plaintiff's Form I-130 petition."); Shoaibi v. Mayorkas, No. 20-CV-7121, 2021 WL 4912951, at *6 (W.D.N.Y. Oct. 21, 2021) ("[I]t is not that [Petitioner] is *entitled* to a *grant* of his I-130 Petition, but that he is entitled to a *fair adjudication* of the I-130 Petition."); Setharatsomphou v. Reno, No. 98 C 7076, 1999 WL 755292, at *4 (N.D. Ill. Sept. 27, 1999) (Section 1154 "provide[s] a right to an adjudication.").

The right to adjudication of an I-130 application includes the right "to be free from undue interference while undertaking the mandated process." Portillo Vasquez v. Turek, No. 2:25-CV-741, 2025 WL 2733631 (D. Vt. Sept. 25, 2025) (addressing T-Visa application); see Gonzalez v. Wesling, No. 26-CV-231, 2026 WL 1765871, at *6 (D.R.I. June 19, 2026) ("[I]ndividuals like Mr. Gonzalez who avail themselves of a legal process offered by USCIS should be entitled to complete that process without undue interference from the Government.") (cleaned up); S.N.C. v. Sessions, 325 F. Supp. 3d 401, 411 (S.D.N.Y. 2018) (petitioner is likely to succeed on the merits of her due process claim because "[p]etitioner has a right to make the [visa] applications

7

and have them fully adjudicated without undue interference.").  When a petitioner's detention interferes with their right to adjudication, that detention is unlawful. See Gonzalez, 2026 WL 1765871, at *6 (detention unlawful where it interfered with petitioner's ability to provide the Government requested biometric data); Gavarete Ramirez v. Nessinger, No. 26-CV-259-MRD-AEM, [Dkt. 7 at 4] (D.R.I. May 14, 2026) (same).

Petitioner submitted an I-130 application and argues that his detention interferes with his right to participate in the adjudication of that application.  Specifically, the Government has requested Petitioner's appearance at an interview, which petitioner cannot attend because he is currently detained.  Respondents have not indicated a willingness to either waive the interview or make Petitioner available for the interview. See Gavarete, 26-CV-259-MRD-AEM, at *3 ("Absent from the record is any sort of a declaration from any of the Respondents in which they assure the Court that they will continue to process the application before effectuating the Petitioner's removal.").  Accordingly, Petitioner's detention interferes with his Due Process protected right to the adjudication of his I-130.

This result does not change because the ultimate outcome of the I-130 adjudication is in the Government's discretion.  Petitioner is not seeking the grant of his I-130.  Instead, he is seeking the adjudication of the application.  As the First Circuit has recognized, "[a] right to seek relief is analytically separate and distinct from a right to the relief itself," and noncitizens are "not precluded from having a vested right in a form of relief merely because the relief itself is ultimately at the discretion of the Executive Branch." Arevalo v. Ashcroft, 344 F.3d 1, 15 (1st Cir. 2003) (emphasis added).

### 2.        <u>Mathews</u> Balancing

Having held that Petitioner has a protected interest in the right to the adjudication of his I-130, the Court turns to the <u>Mathews</u> balancing test.  First, Petitioner has a significant private interest that is affected by his detention.  Freedom from imprisonment is "the most elemental of liberty interests," <u>Hamdi v. Rumsfeld</u>, 542 U.S. 507, 529 (2004), and "lies at the heart of the liberty that [the Due Process] Clause protects," <u>Zadvydas</u>, 533 U.S. at 690.  For that reason, "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." <u>Addington v. Texas</u>, 441 U.S. 418, 425 (1979).  The Government is currently detaining Petitioner in Plymouth County Correctional Facility.  Accordingly, the first factor strongly favors Petitioner. <u>See</u> <u>Hernandez-Lara v. Lyons</u>, 10 F.4th 19, 30 (1st Cir. 2021) (finding the first factor "weighs heavily" in a noncitizen detainee's favor).

The second <u>Mathews</u> factor, "the risk of an erroneous deprivation of such [private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[,]" also weighs in Petitioner's favor. <u>Mathews</u>, 424 U.S. at 335.  As previously explained, Petitioner's detention frustrates his ability to access a necessary step in his I-130 application process.  Instead of permitting Petitioner to find out whether he can lawfully stay in the United States, by undergoing the I-130 application process, Respondents seek to remove Petitioner.  If Petitioner is removed, he will have to wait ten years to enter the United States and file for adjustment of status. 8 U.S.C. § 1182(a)(9)(B)(i)(II).  Where a Petitioner is actively seeking lawful status, removal without process unduly risks erroneous deprivation. <u>Gonzalez</u>, 2026 WL 1765871, at 6-7; <u>Gavarete</u>, 26-CV-259 -MRD-AEM, at *4; <u>Portillo Vasquez</u>, 2025 WL 2733631, at *6.  Therefore, the risk of Respondents depriving Plaintiff of this protected right is substantial.

The final <u>Mathews</u> factor assesses Respondents' interests. The Court recognizes that "[t]he prompt execution of removal orders is a legitimate governmental interest, which detention may facilitate." <u>Hernandez-Lara</u>, 10 F.4th at 32. However, the First Circuit has recognized a "public interest"—which is relevant to considerations of the Government's interest—in avoiding "expending substantial resources on needless detention," particularly for those noncitizens who are neither "dangerous" nor "a flight risk." <u>Id.</u> at 33; <u>see</u> <u>Tenemasa-Lema v. Hyde</u>, 810 F. Supp. 3d 244, 259 (D. Mass. 2025) (Government has little interest in detention where petitioner is neither a flight risk nor a danger to the community).

Respondents have not argued and there is no indication in the record that Petitioner is either a danger to the community or a flight risk. The only known charge against Petitioner was dismissed on May 28, 2026. Further, Petitioner has a United States citizen spouse and is attempting to obtain lawful permanent status in the United States. All this taken together, the Court finds that the Government has little interest in Petitioner's continued detention.

In sum, the <u>Mathews</u> factors weigh definitively in favor of relief. As Petitioner's detention is unconstitutional, the Court need not address the parties' statutory arguments.

## C. Remedy

Having concluded that Petitioner has successfully established a due process violation, the Court next considers what relief he is due. In this area, courts have a fair degree of flexibility. <u>See</u> <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972) ("It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands."); <u>see also</u> <u>Siraj v. U.S. Sent'g Comm'n</u>, No. 19-CV-03375, 2021 WL 1061701, at *6 (D.D.C. Mar. 18, 2021) ("Federal courts have the power and discretion under federal habeas to fashion a wide-range of appropriate

10

relief.") (citing <u>Peyton v. Rowe</u>, 391 U.S. 54, 66-67 (1968)).  After all, habeas corpus is an "adaptable remedy," the "precise application and scope" of which changes "depending upon the circumstances." <u>Boumediene v. Bush</u>, 553 U.S. 723, 779 (2008).

In cases where petitioners' detention prevents them from seeking lawful status, courts have ordered immediate release from ICE custody. <u>See</u> <u>Portillo Vasquez</u>, 2025 WL 2733631, at *7; <u>Gavarete</u>, 26-CV-259-MRD-AEM, at *4; <u>Gonzalez</u>, 2026 WL 1765871, at *10. Accordingly, the Court orders Respondents to immediately release Petitioner from ICE custody, subject to reasonable conditions of release.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's Petition [Dkt. 1] is **GRANTED**.  Petitioner shall be immediately released from ICE custody.  Within two business days, Respondents shall provide a status report confirming compliance with this order.

**SO ORDERED.**

Dated: July 17, 2026                                          /s/ Angel Kelley
                                                             Hon. Angel Kelley
                                                             United States District Judge

11